# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELVIS PENA, on behalf of himself and others similarly situated,<br><br>                                        Plaintiff,<br><br>            -against-<br><br>LE CIRQUE, INC. and MARCO MACCIONI,<br><br>                                        Defendants. | Civil Action No. 14-cv-7541 (ER) |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiff Elvis Pena ("Plaintiff"), on behalf of himself and of a class of individuals he seeks to represent in the above-captioned matter and NYLC LLC, erroneously named in the Complaint as Le Cirque, Inc. (the "Company"), and Marco Maccioni (together with the Company, "Defendants") (Plaintiff and Defendants collectively, the "Parties").

## RECITALS AND BACKGROUND

WHEREAS, a Collective and Class Action Complaint was filed on September 17, 2014, in which claims were asserted against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL") for the alleged failure to pay certain wage, overtime and other monies to Plaintiff and all other employees who are allegedly similarly situated;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims between Plaintiff and Defendants, including, claims asserted in *Pena v. Le Cirque, Inc. et al.* No. 14 Civ. 7541 (the "Litigation");

WHEREAS, Defendants deny all of the allegations made by Plaintiff in the Litigation, and deny any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

WHEREAS, the Parties have engaged in substantial discovery, including but not limited to reviewing thousands of documents exchanged by the Parties, analyzing personnel documents including wage notices, time and payroll records and conducting four depositions;

WHEREAS, the Parties participated in two settlement conferences before Magistrate Judge Frank Maas on February 20, 2015 and March 30, 2015 and a private mediation with Mediator Ruth Raisfeld on May 27, 2015, during which a settlement was reached;

WHEREAS, without admitting or conceding any liability or damages whatsoever and without admitting that wages, overtime and/or other amounts were improperly withheld from any employees, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Plaintiff's Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on Plaintiff and putative members of the collective and class actions, and based upon Plaintiff's counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiff's Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of Plaintiff and the putative members of the collective and class actions;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.      **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1     **Agreement.** "Agreement" means this Settlement Agreement and Release.

1.2     **Acceptance Period.** "Acceptance Period" means the one hundred eighty (180) days that a Class Member has to endorse and cash a Settlement Check after it is mailed.

1.3     **Alternative Minimum Benefit.** "Alternative Minimum Benefit" means the minimum settlement amount of Fifty Dollars and Zero Cents ($50.00) for Class Members whose settlement allocation pursuant to 3.4(B) below falls below Fifty Dollars and Zero Cents ($50.00). This Alternative Minimum Benefit is considered to be 100% liquidated damages and is not subject to tax withholdings.

1.4     **CAFA Notice.** "CAFA Notice" means the notice to be sent by Defendants to the appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

1.5     **Class Counsel.** "Class Counsel" shall mean D. Maimon Kirschenbaum, Esq. and Josef Nussbaum, Esq., Joseph & Kirschenbaum LLP, 233 Broadway, 5th Floor, New York, New York 10279, (212) 688-5640.

1.6     **Class Members.** "Class Members" shall mean Plaintiff Elvis Pena, Opt-In Plaintiffs Edwin Ceballos, Jesus Mejia, Luis Reinoso, Pablo Barzallo, Stamen Nedev, Wilson Segarra, Ion Preda, Roberto Lozano, Mihaela Aleksieva, Cesar Tascon, Carlos Ludisaca

and Jamie Silva and Servers, Runners, Bussers, Bartenders and Sommeliers who worked for the Company during the Relevant Statutory Period.

1.7 **FLSA Collective Members.** "FLSA Collective Members" shall mean all Class Members who worked during the FLSA period as defined in Section 3.4.

1.8 **Court.** "Court" means the United States District Court for the Southern District of New York, the Honorable Magistrate Judge Frank Maas presiding.

1.9 **Days.** "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.10 **Defendants.** "Defendants" shall mean NYLC LLC, erroneously named in the Complaint as Le Cirque, Inc. ("Corporate Defendant") and Marco Maccioni.

1.11 **Defendants' Counsel.** "Defendants' Counsel" shall mean Felice B. Ekelman, Esq. and Adam S. Gross, Esq. of Jackson Lewis P.C., 666 Third Avenue, New York, New York 10017.

1.12 **Effective Date.** "Effective Date" of the settlement shall mean the last of the following dates: (a) the date thirty (30) days after the entry of an order by the District Court granting final approval of the Settlement, if there are no appeals; or (b) if there is an appeal of the Court's decision granting final approval, the day after all appeals are finally resolved in favor of final approval.

1.13 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.14 **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement.

1.15 **Litigation.** "Litigation" means the above-captioned case.

1.16 **Named Plaintiff.** "Named Plaintiff" means Elvis Pena.

1.17 **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Qualified Settlement Fund (as defined below in Section 1.22) after deductions for: (1) the Settlement Claim Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; and (3) Court-approved Service Awards to Named Plaintiff in return for a general release.

1.18 **Notice or Notices.** "Notice" or "Notices" means the Court–approved Notices of Proposed Settlement of Class Action and Collective Action Lawsuit.

1.19 **Objector.** "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

3

**1.20**   **Opt-In Plaintiffs.** "Opt-In Plaintiffs" mean Edwin Ceballos, Jesus Mejia, Luis Reinoso, Pablo Barzallo, Stamen Nedev, Wilson Segarra, Ion Preda, Roberto Lozano, Mihaela Aleksieva, Cesar Tascon, Carlos Ludisaca and Jamie Silva.

**1.21**   **Opt-out Statement.** "Opt-out Statement" is a written signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

**1.22**   **Participating Class Members.** "Participating Class Members" are all Class Members who do not submit a valid Opt-out Statement.

**1.23**   **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

**1.24**   **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by the Company.   The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.   Interest, if any, earned on the QSF will become part of the Net Settlement Fund.

**1.25**   **Released Claims.** "Released Claims" means all claims asserted, or wage and hour claims that could have been asserted, under federal or state laws by and on behalf of the Class Members in the Litigation.   The Released Claims include all claims under federal or state laws for unpaid regular or overtime wages, any related wage and hour claims, all claims for gratuities, all claims for penalties under NYLL § 195, all derivative benefit claims (both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees and costs related to such claims through the date of the Preliminary Approval Order.

**1.26**   **Relevant Statutory Period.** The "Relevant Statutory Period" refers to the period from September 17, 2008 through the date of the Order Granting Preliminary Approval.

**1.27**   **Settlement Claims Administrator.** The "Settlement Claims Administrator" will be Rust Consulting, which was selected by the Parties, subject to approval by the Court, to mail the Notices and administer the calculation, allocation, and distribution of the QSF, though the parties reserve the right to select a different Settlement Claims Administrator upon joint consent.   The Settlement Claims Administrator's fees shall be borne by the QSF.

**1.28**   **Settlement Amount.** "Settlement Amount" means One Million One Hundred Thousand Dollars and Zero Cents ($1,100,000.00), which is the maximum amount Defendants will pay to settle the Litigation as set forth in this Agreement, except that Defendants' obligation to pay the employer portion of payroll taxes is separate and apart and in addition to the Settlement Amount.

**1.29**   **Settlement Checks.** "Settlement Checks" means the set of checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

## 2.    INITIAL PROCEDURAL ISSUES

**2.1**    **Binding Agreement.**  This Agreement is a binding agreement and contains all material agreed-upon terms for the parties to seek a full and final settlement of the Litigation.

**2.2**    **Retention and Responsibilities of the Settlement Claims Administrator.**  The Settlement Claims Administrator will be responsible for the mailing of Notices to Class Members in accordance with the Court's Preliminary Approval Order, distributing Service Awards, calculating the Settlement Checks in accordance with the Court's Final Approval Order, the claims administration process, distribution of the Settlement Checks to Class Members, and providing copies of the Settlement Checks (front and back) signed by the Class Members to Defendant's Counsel.

(A)    The parties will have equal access to the Settlement Claims Administrator, and the Settlement Claims Administrator will provide regular reports to the parties, but no less frequently than every two (2) weeks, regarding the status of the mailing of the Notices to Class Members, the claims administration process, the identity and number of Class Members who object and/or opt-out of the Settlement, and the distribution and redemption of the Settlement Checks.

(B)    Defendants agree to reasonably cooperate with the Settlement Claims Administrator and to provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and reasonably assist the Settlement Claims Administrator in locating Class Members.

**2.3**    **Preliminary Approval Motion.**

(A)    Following the Parties' execution of this Agreement, Plaintiff's counsel will submit to Defendants' Counsel a draft Motion for Preliminary Settlement Approval memorandum of law, and allow Defendants five (5) days to review the terms of the memorandum of law to ensure that it is consistent with this Agreement.  Plaintiff's counsel shall also draft a proposed Order certifying for purposes of settlement, the State Class under Fed. R. Civ. P. 23 and approving the settlement and shall allow Defendants five (5) days to review and provide comments on this Order.  Should Defendants not approve the Order drafted by Plaintiff's counsel, and the parties cannot come to an agreement on the language of the Order, Defendants shall be permitted to submit a counter Order to the Court for its review.

(B)    Class Counsel will file the Preliminary Approval Motion with the Court.  The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt-out of this Agreement or provide objections to this Agreement, which date shall be thirty (30) days from the mailing of Notice to the Class Members, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(C)    In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of

Dismissal" that will, among other things, seek to: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award Service Awards to the Named Plaintiff.

(D)    The Parties expect that the Preliminary Approval Motion will not be opposed, but Defendants may respond to the Preliminary Motion to ensure that it is consistent with the terms of this Agreement.  Any responsive papers will be due seven (7) days after Plaintiffs file the Preliminary Approval Motion.

(E)    If the Court denies the Preliminary Approval Motion, unless the parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted.  Defendants retain the right to contest whether the Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted in the Litigation.

(F)    The parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

**2.4    Notice to Class Members**

(A)    Within fifteen (15) days of the filing of the Order Granting Preliminary Approval, Defendants will provide the Settlement Claims Administrator, in electronic form, for all Class Members the following information: name, social security number, last known address, dates of employment, total amount of tips paid, and total number of tip credit hours worked, as that information exists on file with Defendants.  All information provided regarding Class Members will be provided to Class Counsel, except for Class Members' social security numbers.

(B)    Within fifteen (15) days of Defendants' provision of the information set forth in Section 2.4(A) to the Settlement Claims Administrator, the Settlement Claims Administrator will mail to all Class Members, via First Class United States Mail, postage prepaid, the Court–approved Notices of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing in the form appended hereto as Exhibit A.

(C)    The Settlement Claims Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable and shall attempt one re-mailing.  The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.5     Class Member Opt-outs.**

(A)     Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, job title, address, and telephone numbers and states, "I opt out of the Le Cirque wage and hour settlement" ("Opt-out Statement"). To be effective, an Opt-out Statement must be postmarked within thirty (30) days after the Settlement Claims Administrator mails the Notice.

(B)     The end of the time period to opt-out of the settlement ("Opt-out Period") shall be thirty (30) days after the day on which the Settlement Claims Administrator successfully mails a Notice to a Class Member. Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable, will be allowed a second thirty (30) day period to opt-out from the date of the second mailing. The Settlement Claims Administrator will not attempt more than two (2) mailings of the Notice to any Class Member, and no mailing shall occur more than thirty (30) days after the first mailing to the Class Member.

(C)     The Settlement Claims Administrator will, within ten (10) days after the last day on which it mails the last Notice to any Class Member, notify Class Counsel and Defendants' Counsel in writing by email and by overnight delivery of the precise date of the end of the Opt-out Period.

(D)     The Settlement Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt thereof. The Settlement Claims Administrator will also, within three (3) days of the end of the Opt-out Period, file with the Clerk of Court, stamped copies of any Opt-out Statements. The Settlement Claims Administrator will, within 24 hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)     Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, and will be issued a Settlement Check, which will contain a release of both FLSA and New York Labor Law state law claims, and a consent-to-join the Litigation, as set forth in this Agreement.

**2.6     Defendants' Ability to Revoke.** Defendants have the right to revoke this Agreement if more than 10% of the Class Members timely file an Opt-out Statement. If Defendants revoke this Agreement, the Litigation will proceed as if there was no attempt at

settlement.   In that event, the classes certified for purposes of settlement shall be decertified, and Defendants may contest whether this Litigation should be maintained as a class action or collective action and contest the merits of the claims being asserted by Plaintiffs in the Litigation.

**2.7    Objections to Settlement.**

(A)    Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.   To be considered, such statement must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain thirty (30) days after the Settlement Claims Administrator mails Notice to such Class Member.   The statement must include all reasons for the objection and any reasons not included in the statement will not be considered.   The statement must also include the name, job title, address, and telephone numbers for the Class Member making the objection.   The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and first class mail no later than three (3) days after receipt thereof.   The Settlement Claims Administrator will also file the date-stamped originals of any and all objections with the Court within three (3) days after the end of the Opt-out Period.

(B)    An individual who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.   An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections.   An Objector may withdraw his or her objections at any time.   No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)    The parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.8    Fairness Hearing and Motion for Final Approval and Dismissal.**

(A)    Plaintiff's Counsel will e-mail to Defendants' Counsel a draft Motion for Final Approval of Settlement, Payment of Service Awards and Payment of Plaintiff's Counsel's Legal Fees memorandum of law, a Proposed Order Approving the Settlement and Dismissing the Litigation with prejudice ("Final Approval Order"), and a Proposed Judgment ("Proposed Judgment") and allow Defendants' Counsel five (5) days to review and make comments on the terms of the memorandum of law, Final Approval Order, and Proposed Judgment to ensure that they are consistent with this Agreement.   Should Defendants not approve the Final Approval Order or the Proposed Judgment drafted by Plaintiff's Counsel, and the parties cannot come to an agreement on the language of these documents,

Defendants shall be permitted to submit a counter Final Approval Order and Proposed Judgment to the Court for its review.  Subject to Defendants filing a counter Final Approval Order or counter Proposed Judgment, Class Counsel will file the Final Approval Motion, Final Approval Order, and Proposed Judgment with the Court.

(B)  At the Fairness Hearing and in the Motion for Final Approval and Dismissal, the parties will request that the Court, among other things: (1) certify the Class for purposes of settlement; (2) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (3) order the Settlement Claims Administrator to distribute Settlement Checks from the Net Settlement Fund to the Class Members and Service Award, if any, to be paid to the Named Plaintiff as described in this Agreement; (4) order the attorneys' fees and costs to be paid to Class Counsel from the QSF; (5) order the dismissal with prejudice of all claims asserted in the Litigation and the claims of all Class Members who did not opt-out, subject only to an application for relief under Fed. R. Civ. P. 60(b)(1), or 60(d); (6) order entry of Final Judgment in accordance with this Agreement; and (7) retain jurisdiction as necessary for the purpose of filing consent–to–join forms from the Class Members as set forth in their Settlement Checks and other relief.

(C)  If the Court fails to enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the parties will resume the Litigation unless the parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying Final Approval; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(D)  If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted.

(E)  If the Court fails to enter a Final Approval Order, the Settlement Claims Administrator will provide notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement.  The content of such notice shall be agreed to by the parties and such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notices.

(F)  The Final Approval Order will direct the Settlement Claims Administrator to (1) provide verification to Class Counsel and Defendants' Counsel that it has distributed the Settlement Checks, (2) retain copies of all of the endorsed Settlement Checks with releases, and (3) provide Defendants' Counsel with the original or copies of the endorsed Settlement Checks in accordance with this Agreement and the Court's Final Approval Order.

**2.9**   **Releases and Consents to Join.**

(A)   A Class Member who does not timely return an Opt-out Statement will be issued Settlement Checks by the Settlement Claims Administrator from the Net Settlement Fund in accordance with the Final Approval Order.

(B)   All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

**"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

By endorsing this check, I consent to join the FLSA collective action against Defendants styled *Pena v. Le Cirque, Inc. et al.* No. 14 Civ. 7541 and release Defendants from all wage and hour claims under the Fair Labor Standards Act and the New York Labor Law brought or which could have been brought in the Litigation, including but not limited to minimum wage, overtime and misappropriated gratuity claims and claims for penalties under NYLL § 195.

_____        Dated:_____
Signature

Any modification or amendment of the above-language by the Class Member at Defendants' discretion may not be accepted, and may void the Settlement Check.

(C)   The Settlement Claims Administrator will mail the Settlement Checks in two installments.  The First Installment ("First Installment"), as defined further in Section 3, will be mailed within 10 days after Defendants cause the First Installment to be paid, which shall be on the later of January 1, 2016 or within five (5) days of the Effective Date.   The Second Installment ("Second Installment"), as defined further in Section 3, will be mailed within 10 days after Defendants cause the Second Installment to be paid, which shall be on the later of June 30, 2016 or five (5) days after the Effective Date.

(D)   One Hundred Eighty (180) days after the date the First Installment Settlement Checks are mailed, the Settlement Claims Administrator shall provide Defendants two (2) signed copies of each Settlement Check that has been cashed.  After One Hundred Eighty (180) days from the date the Second Installment Settlement Checks are mailed, the Settlement Claims Administrator shall provide Defendants two (2) signed copies of each Settlement Check that has been cashed.  After Two Hundred Seventy (270) days from the date the Second Installment Settlement Checks are mailed, the Settlement Claims Administrator shall provide Defendants two (2) signed copies of each replacement Settlement Check that has been cashed.

**3.    SETTLEMENT TERMS**

**3.1    Settlement Amount.**

(A)    Defendants agree to pay a Settlement Amount of up to One Million One Hundred Thousand Dollars and Zero Cents ($1,100,000.00), which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiff, any fees and costs associated with investing and liquidating the Qualified Settlement Fund, and the Settlement Claims Administrator's fees and costs.   Defendants will not be required to pay more than One Million One Hundred Thousand Dollars and Zero Cents ($1,100,000.00) under the terms of this Agreement, except that Defendants' portion of employer taxes is not included in the Settlement Amount.

(B)    Defendants shall cause the First Installment of the Settlement Amount, equal to Five Hundred and Fifty Thousand Dollars and Zero Cents ($550,000.00) to be paid to the Settlement Claims Administrator on the later of January 1, 2016 or within five (5) days of the Effective Date.

(C)    The Settlement Claims Administrator shall deposit the First Installment of the Qualified Settlement Fund entirely into FDIC insured interest bearing accounts and interest from such interest bearing accounts will become part of the Net Settlement Fund and be held by the Settlement Claims Administrator in escrow.

(D)    Defendants shall cause the Second Installment of the Settlement Amount, equal to Five Hundred and Fifty Thousand Dollars and Zero Cents ($550,000.00), to be paid to the Settlement Claims Administrator on the later of June 30, 2016 or five (5) days after the Effective Date.

(E)    The Settlement Claims Administrator shall deposit the Second Installment of the Qualified Settlement Fund entirely into FDIC insured interest bearing accounts and interest from such interest bearing accounts will become part of the Net Settlement Fund and be held by the Settlement Claims Administrator in escrow.

(F)    Class Members will have one hundred eighty (180) days from the date of the mailing of the Settlement Checks to cash their Settlement Checks.   Class Members who lose or do not receive their settlement checks must request a replacement check within 180 days of the check's initial issue date.   All replacement checks shall be valid for forty five (45) days.

(G)    Any uncashed Settlement Checks or Service Awards and all amounts remaining in the QSF will revert to Defendants.  Payment shall be issued 230 days after the initial date of issuance of each of the First and Second Installment payments.

**3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)    At the Fairness Hearing and in the Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than 33 1/3 % of the Settlement Amount, and for reimbursement of their actual litigation costs and expenses to be paid from the QSF. After depositing the Settlement Amount with the Settlement Claims Administrator for the QSF, Defendants shall have no additional liability for Class Counsel's attorneys' fees and costs.

(B)    The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval. Any fees or costs sought by Class Counsel but not approved by the Court shall be distributed to the Net Settlement Fund.

(C)    The attorneys' fees and costs shall be paid from the QSF in two installments at the time the payments to Participating Class Members are mailed.

**3.3    Service Award and to Named Plaintiff.**

(A)    In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiff will apply to the Court to receive no more than Ten Thousand Dollars and Zero Cents ($10,000.00) as a Service Award from the QSF.

(B)    The outcome of the Court's ruling on the application for the Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal. Should all or part of any Service Award sought not be approved by the Court, the sum shall revert to the Net Settlement Fund.

(C)    Named Plaintiff agrees to the general release in Section 4.1(C) in consideration for receipt of the Service Award, if any, and his respective share of the QSF.

**3.4    Net Settlement Fund and Allocation to Class Members.**

(A)    The allocation to Participating Class Members for Settlement Checks will be made from the remainder of the Qualified Settlement Fund after deductions for: (1) the Settlement Claims Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; (3) Court-approved Service Award to Named Plaintiff; and (4) any fees associated with establishing, investing, or liquidating the Settlement Fund.

(B)    A Participating Class Member's proportionate share of the Qualified Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following:

(1)    The Net Settlement Fund shall be paid according to the following formula:

    (a)    The Net Settlement Fund shall be paid to Class Members who worked from September 17, 2008 through the date of the Order Granting Preliminary Approval.

    (b)    Notwithstanding the formulas agreed upon by the Parties, no Participating Class Member will be awarded a payment that is less than the Alternative Minimum Benefit, which equals $50;

    (c)    **FLSA Bonus.**  FLSA Collective Members shall be paid $20.00 per week worked during the FLSA Period as an "FLSA Bonus."  The FLSA Bonus shall be paid first before distribution of the amounts set forth in paragraphs 3.4(B)(c)-(e) but after payments of any Alternative Minimum Benefits.  The FLSA Period shall be defined as follows:

        (i)    For those individuals who filed consent forms prior to May 27, 2015, the FLSA Period constitutes the three year period prior to filing their consent forms until September 30, 2014;

        (ii)    For those individuals who did not file consent forms as of May 27, 2015, the FLSA Period constitutes the three year period prior to the date the Court issues an Order Conditionally Approving the Settlement until September 30, 2014.

    (d)    **Tip Disgorgement Claim.**  Tip Disgorgement Claim benefits shall be distributed to all servers, bussers, runners, bartenders and sommeliers who participated in the tip pool at any time from September 17, 2008 through October 30, 2014.  The Tip Disgorgement Claim shall constitute 66% of the remaining amount in the Net Settlement Fund after the FLSA Bonus is paid.  The Tip Disgorgement damages shall be allocated according to the following formula: (1) compute the total tips paid to each individual Class Member during the period September 17, 2008 through the date of the Order Granting Preliminary Approval; (2) divide the total tips earned by each Class Member by the total tips earned by all Class Members from September 17, 2008 through the date of the Order Granting Preliminary Approval; and (3) multiply the amount derived in (2) by 66% of the remaining amount in the Net Settlement Fund after payment of any Alternative Minimum Benefits and the FLSA Bonus to determine each Class Member's Tip Disgorgement benefits.

    (e)    **Tip Credit Claim.**  Tip Credit Claim benefits shall be distributed to all servers, bussers, runners and sommeliers who were paid at

the tip credit rate at any time from September 17, 2008 through October 30, 2014. The Tip Credit Claim shall constitute 27% of the remaining amount in the Net Settlement Fund after the FLSA Bonus is paid. The Tip Credit damages shall be allocated according to the following formula: (1) compute the total number of tip credit hours worked by each Class Member from September 17, 2008 through the date of the Order Granting Preliminary Approval; (2) divide the total number of tip credit hours worked by each Class Member by the total number of tip credit hours worked by all Class Members from September 17, 2008 through the date of the Order Granting Preliminary Approval; and (3) multiply the amount derived in (2) by 27% of the remaining amount in the Net Settlement Fund after payment of any Alternative Minimum Benefits and the FLSA Bonus to determine each Class Member's Tip Credit benefits.

(f)  **NYLL § 195 Notice Claim.**  The NYLL § 195 Notice Claim benefits shall be distributed to all Class Members who worked from April 2011 through October 30, 2014. The NYLL § 195 Notice Claim shall constitute 7% of the amount remaining in the Net Settlement Fund after the FLSA Bonus is paid. The NYLL § 195 Notice damages shall be allocated according to the following formula: (1) compute the total number of weeks worked by each Class Member from April 2011 through the date of the Order Granting Preliminary Approval; (2) divide the total number of weeks worked by each Class Member by the total number of weeks worked by all Class Members from April 2011 through the date of the Order Granting Preliminary Approval; and (3) multiply the amount derived in (2) by 7% of the remaining amount in the Net Settlement Fund after payment of any Alternative Minimum Benefits and the FLSA Bonus to determine each Class Member's NYLL § 195 Notice benefits.

(C)  Defendants will pay the employer's share of taxes in addition to the Net Settlement Fund. Any portion of the taxes on the uncashed checks will revert back to Defendants.

(D)  Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.5.

(E)  The Claims Administrator shall mail to all Class Members their proportionate share of the Net Settlement Fund. The Claims Administrator shall use reasonable efforts to make an additional mailing to Class Members whose checks are returned because of incorrect addresses. Such efforts shall include using social security numbers to obtain better address information.

14

(F)     All payments to Class Members made pursuant to this Agreement shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by the Class Members. It is expressly understood and agreed that the receipt of such settlement payments will not entitle any Class Member to additional compensation or benefits under any of Defendants' bonus, contest or other compensation or benefit plans or agreements in place during the Relevant Statutory Period, nor will it entitle any Class Member to any increased retirement, 403b plan, 401K benefits or matching benefits or deferred compensation benefits. It is the intent of this Settlement that the settlement payments provided for in the Stipulation of Settlement are the sole payments to be made by Defendants to the Class Members, and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the settlement payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the Relevant Statutory Period).

**3.5     Tax Characterization.**

(A)     Settlement Checks paid to Class Members will be allocated 50% to W-2 wage payments and 50% to 1099 non-wage payments for interest and liquidated damages. Any Service Awards will be considered 1099 non-wage income. All wage payments to Class Members shall be subject to applicable withholding taxes.

(B)     The Settlement Claims Administrator is responsible for issuing and filing appropriate forms associated with payments of any amounts to Class Members, including, but not limited to, issuing the W-2 and 1099 Forms for all amounts paid to the Class Members.

**3.6     Confession of Judgment.**

(A)     Contemporaneous with Defendants delivering a signed copy of this Agreement to Class Counsel, Defendants shall also deliver to Class Counsel an original Affidavit of Confession of Judgment executed by Defendants, substantially in the form of Exhibit B, attached hereto.

(B)     In the event Defendants fail to timely pay one or both of the two installments described in Section 3.1 above, Plaintiff and the Class Members shall be entitled to commence a collection proceeding against Defendants in the United States District Court for the Southern District of New York after first giving notice of default (said notice of default to be served by regular mail and/or email at the offices of Defendants' counsel, Felice B. Ekelman, Esq., Jackson Lewis P.C., 666 Third Avenue, New York, New York 10017, ekelmanf@jacksonlewis.com), and further providing a fourteen (14) day right to cure such default. In the event Defendants fail to cure within fourteen (14) days, Plaintiffs and the Class shall be permitted to file and enter the Affidavit of Confession of Judgment for any

defaulted installment payment(s), but less any payments previously paid by Defendants pursuant to the terms of this Agreement.

(C)   The Parties agree that this Confession of Judgment shall be held in escrow by Class Counsel and shall not be filed in any court unless and until Defendants fail to cure a default as set forth above.   Within five (5) days of full payment of the total Settlement Amount, Plaintiff and the Class Members, by and through their attorneys, shall return the original Confession of Judgment to counsel for Defendants and they shall not retain any copies thereof.

(D)   The Confession of Judgment is given solely to secure Plaintiff and Class Members in the installment payments of the Settlement Amount as agreed to herein.

## 4.   RELEASE

### 4.1   Release of Claims.

(A)   By operation of the entry of the Judgment and Final Approval, except as to such rights or claims as may be created by this Agreement, each individual Class Member who does not timely opt-out pursuant to this Agreement forever and fully releases NYLC LLC, erroneously identified in the Complaint as Le Cirque, Inc., and Marco Maccioni, as well as their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsures, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them, from all claims asserted, or wage and hour claims that could have been asserted, under federal or state laws by and on behalf of the Class Members in the Litigation.  The Released Claims include all claims under federal or New York state laws for regular or overtime wages, any related wage and hour claims, all claims for gratuities, NYLL § 195 penalties, all related derivative benefit claims (both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees and costs related to such claims through the date this Settlement Agreement and Release is executed by all Parties.

(B)   Except as provided in this Agreement, Class Counsel and Named Plaintiff, on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

(C)   In addition to the waiver and release contained in Sections 4.1(A)-(B) above, and in consideration for the payment(s) received under Section 3.1(A) as well as Section 3.3(A), Named Plaintiff, his heirs, executors, administrators, successors and assigns, voluntarily releases and forever discharges Defendants, and any of

their owners, subsidiaries, divisions, affiliated entities, agents, officers, principals, trustees, administrators, executors, attorneys, employees, former employees, insurers, predecessors, successors and assigns, both individually and in their official capacities (collectively "Releasees") of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which he may have against Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act; the New York City Administrative Code; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; Article 6 of the New York Labor Law, New York Labor Law § 190 et seq.; the New York occupational safety and health laws; any other federal, state, city or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date of Plaintiff's execution of this Agreement.

**4.2** **Denial of Liability & Confidentiality.**

(A) Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, or as an admission that a class should be certified for any purpose other than settlement purposes.

(B) The Parties and Class Counsel agree that they will not in any manner publicize the terms of this Settlement Agreement and Release, which includes notifying any member of the media regarding the terms and conditions of the settlement and includes posting or disseminating the terms and conditions of the settlement on any social media (including Facebook, Law 360, Eater, Grub Street, or similar media outlets) or Class Counsel's website. Such prohibition extends to

dissemination of any information, whether oral, electronic or in any document form including but not limited to providing copies of this Settlement Agreement and Release, providing information regarding the terms of the Settlement Agreement and Release, providing information regarding the filing of any pleadings with the Court including the Motion for Preliminary Approval and/or the Motion for Final Approval of the Settlement Agreement and Release. Dissemination of this Settlement Agreement and Release and the terms set forth herein shall be limited to filing documents with the Court as is necessary to effectuate the Settlement Agreement and Release.

(C)  Plaintiff agrees that the terms of the settlement will be kept confidential up until the filing of the Motion for Preliminary Approval, except that Plaintiff may disclose information to his immediate family or life partners (upon securing an agreement by such person to keep the information confidential), tax or legal advisor.  Plaintiff agrees and understands that even following the date of the Motion for Preliminary Approval, the terms of the Agreement are not to be publicized in any manner.  Plaintiff further agrees not to make disparaging comments related to Defendants except as may be required or protected by law.

## 5.  INTERPRETATION AND ENFORCEMENT

**5.1  Cooperation Between the Parties; Further Acts.**  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2  No Assignment.**  Class Counsel and Named Plaintiff, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3  Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement.

**5.4  Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.5  Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length, including participating in three separate mediation sessions.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6     **Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7     **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.8     **Blue Penciling.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.9     **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

5.11    **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.12    **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.13    **Signatures of Named Plaintiff.**  This Agreement is valid and binding if signed by the Individual Defendant, the Company's authorized representatives and by the Named Plaintiff.

5.14    **Facsimile and Email Signatures.**  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION IN SECTION "3" AND OTHER VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, NAMED PLAINTIFF FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH HIS ATTORNEYS, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS HE HAS OR MIGHT HAVE AGAINST RELEASEES.


I AGREE TO THESE TERMS.

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.

ELVIS PENA

31/7/15
Date

By: _____
Elvis Pena


NYLC LLC

8/21/15
Date

By: _____
Name : CARLO MANTICA


MARCO MACCIONI

8|21|15
Date

By: _____
Marco Maccioni